USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/28/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DE SANGOSSE AGROQUIMICA LTDA,
Plaintiff,

-against-

JDGU INVESTMENT LLC, et al.,
Defendants.

23-CV-10771 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff De Sangosse Agroquimica Ltda seeks to recover a $1,162.605.61 payment it made to Defendant JDGU Investment LLC ("JDGU") because of a spoofing fraud. Co-Defendant Juan Diego Gonzalez is JDGU's sole member and purportedly masterminded the fraud..[1] Before the Court are Defendants' motion for summary judgment arguing the Court lacks personal jurisdiction and Plaintiff's motion for partial summary judgment on certain of its claims. For the following reasons, Defendants' motion is DENIED and Plaintiff's motion is GRANTED.

## BACKGROUND

### I. RELEVANT FACTS.[2]

The facts are uncomplicated. Plaintiff sells agricultural products. Dkt. No. 115 ¶ 1. One of its suppliers is a company called Loveland, which had an employee named Kathryn Freeman. *Id.* ¶ 2; Dkt. No. 1 ("Compl.") ¶ 33. On October 21, 2022, Plaintiff received an email,

[1] Defendant GRF Consulting, LLC was dismissed by stipulation on August 26, 2025. Dkt. No. 151. Defendants GI Constructors ZG LLC and Supply A.K. LLC have not appeared and are in default.

[2] The following facts are taken from the Joint Rule 56.1 Statement (Dkt. No. 115), or from the parties' separate Rule 56.1 Statements, Dkt. Nos. 116, 119, when the facts are undisputed or cannot be reasonably disputed based on the evidence in the record.

purporting to be from Ms. Freeman, requesting that Plaintiff update Loveland's payment information so all prospective payments to Loveland would be sent to a new bank account. Dkt. No. 115 ¶ 3. The bank account was maintained at JPMorgan Chase and had a listed address in New York. *Id.* Plaintiff complied, updated its records, and, on November 1, 2022, wired $1,162,605.61 to that account, as payment on Loveland invoices. *Id.* ¶ 4.

The bank account did not belong to Loveland. Nor did Ms. Freeman send the email. Instead, the bank account belonged to Defendant JDGU, a company controlled exclusively by Gonzalez. *Id.* ¶ 4. The $1,162,605.61 promptly disappeared from the bank account. Within ten (10) days of receipt, JDGU wired a total of $264,710.8 to GI Constructors, Supply AK, and GRF Consulting and then withdrew the remaining sum, leaving the bank account overdrawn by $94,242.63. *Id.* ¶¶ 5, 16. Plaintiff has no known business relationship or legitimate debts to any of these entities, and despite numerous requests, none of these entities have returned Plaintiff's money. This lawsuit followed.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on December 11, 2023. The complaint alleges fraud (Count One), unjust enrichment (Count Two), Conversion (Count Three), aiding and abetting conversion (Count Four), fraudulent conveyance under the New York Uniform Voidable Transactions Act (Counts Five through Eight), and one count of "Money Had and Received" (Count Nine).

Discovery began on June 18, 2024. Dkt. No. 55. It revealed little, because JDGU and Gonzalez responded to many discovery requests by pleading the Fifth Amendment right against self-incrimination and refusing to answer questions or produce documents. *See, e.g.*, Dkt. No. 115 ¶ 12. Discovery did reveal (or failed to controvert) the following facts. First, JDGU's sole member, employee, and agent is Gonzalez. Dkt. No. 115 ¶ 6. JDGU's corporate address is

Gonzalez's home address. *Id.* ¶¶ 6–7. Gonzalez regularly draws on JDGU funds for personal expenses. Second, although JDGU transferred hundreds of thousands of dollars to GI Constructors, Supply AK, and GRF Consulting, JDGU appeared to receive nothing in return. *Id.* ¶ 8. Defendants have not produced any documents showing the transfers were payment for legitimate debts or other business transactions. *Id.* ¶¶ 10–13.

Following the close of discovery, Plaintiff moved for summary judgment against JDGU and Gonzalez. Dkt. No. 114. It argues the Court should pierce JDGU's corporate veil and find Gonalez personally liable for any money judgment against JDGU. *Id.* at 6–10. It further argues the Court should grant summary judgment on its unjust enrichment, conversion, fraudulent conveyance, and "Money Had and Received" claims. *Id.* at 10–20. Last, it argues the Court should award $1,162,605.61 in compensatory damages plus interest and attorney's fees. *Id.* at 20–24. Defendants JDGU and Gonzalez cross-moved for summary judgment, arguing the Court lacks personal jurisdiction over them. Dkt. No. 117.

## DISCUSSION

### I. LEGAL STANDARD ON SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)..[3] "A fact is 'material' when it 'might affect the outcome of the suit under governing law.'" *McCarthy v.*

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

*Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). In determining whether a genuine issue of material fact exists, "[t]he evidence of the nonmovant is to be believed," and a court must draw "all justifiable inferences" in favor of the nonmovant. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

Once the movant has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e), emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in [the nonmovant's] favor." *Anderson*, 477 U.S. at 256. Reliance upon "conclusory statements" or "mere allegations" is not sufficient to defeat summary judgment. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532–33 (2d Cir. 1993).

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS DENIED

Defendants' motion for summary judgment arguing the Court lacks personal jurisdiction over them is DENIED. A defendant may waive or forfeit a personal jurisdiction argument by participating in the litigation. *Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016). Defendants have participated in this litigation for years. The window for them to argue this Court lacks personal jurisdiction over them has long since closed. JDGU and Gonalez answered the complaint on April 8, 2024. Dkt. No. 35. On June 7, 2024, Defendants joined Plaintiffs in filing "a joint letter on the proposed civil case management plan . . . that was the result of a

conferral and joint decision between Plaintiff and Defendants." Dkt. No. 126 ¶¶ 5–6. Meeting and conferring on a case management plan to set a discovery schedule obviously contemplates future participation in the litigation. Defendants participated in discovery, serving requests for production and interrogatories. *Id.* ¶ 8. Defendants also responded to Plaintiff's discovery requests, producing some records during discovery while, in most other instances, asserting Fifth Amendment rights. *See* Dkt. Nos. 121 at 7; 115 ¶¶ 8, 12. Having actively participated in this case for years, Defendants may not now argue this Court lacks personal jurisdiction over them. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011); *Roberts*, 658 F. App'x at 616.

Personal jurisdiction would be proper even if Defendants had not waived or forfeited the issue. The exercise of personal jurisdiction is proper if it (1) complies with "a state-law statutory basis" and (2) comports with due process. *Charles Schwab Corp. v. Bank of Amer. Corp.*, 833 F.3d 68, 82 (2d Cir. 2018). New York's Civil Practice Law and Rules § 302(a)(1) permits a court to exercise personal jurisdiction over a person who transacts any business within the state so long as the claim asserted arises from that business activity. N.Y. C.P.L.R. § 302(a)(1); *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). "The touchstone for jurisdiction under New York's long-arm statute is the intent to reach a forum." *Spetner v. Palestine Investment Bank*, 70 F.4th 632, 640 (2d Cir. 2023). The Due Process Clause, meanwhile, requires that a "defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013). "The contacts must be defendant's own choice and not random, isolated, or fortuitous." *Ford Motor Co. v. Montana*

*Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Additionally, the plaintiff's claim "must arise out of or relate to the defendant's contacts' with the forum." *Id.*

Exercising personal jurisdiction over Gonzalez and JDGU comports with New York's long-arm statute, C.P.L.R. § 302(a)(1), because Defendants transacted business in New York by maintaining the New York-based JP Morgan account central to committing the alleged fraud. *Accord Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382 (S.D.N.Y. 2013); *Eldesouky v. Aziz*, No. 11-CV-06986 (JLC), 2014 WL 7271219, at *6 (S.D.N.Y. Dec. 19, 2014); *Style Stitch, Inc. v. Avyan Grp. LLC*, No. 23-CV-10701 (MKV), 2025 WL 2710105, at *6 (S.D.N.Y. Sept. 23, 2025). Furthermore, and even drawing all inferences in Defendants' favor, the inescapable conclusion is that Gonzalez sent the fraudulent email to Plaintiff..[4] That email directed Plaintiff to wire money to a New York-based bank account belonging to JDGU and controlled by Gonzalez. Defendants' availment of the privilege of doing business in New York, *i.e.*, maintaining the bank account, was therefore intrinsic to the claims against them in this lawsuit. Defendants also disbursed Plaintiff's money from that account, which is, again, deliberate action that is intrinsic to this case. Accordingly, Defendants' contacts with the forum are not just related but integral to this case, satisfying New York's long-arm statute.

Exercising personal jurisdiction comports with Due Process for similar reasons. The complaint alleges that Defendants fraudulently instructed Plaintiff to send monies to a New York-based bank account and proceeded to transfer all of the fraudulently induced money out of

[4] The fraudulent email directed Plaintiff to send money to a bank account that Gonzalez, and only Gonzalez, could access. JDGU then wired hundreds of thousands of dollars to other entities before withdrawing the remainder. As JDGU's sole member and employee, the operation of logic dictates Gonzalez executed this transaction. Whereas an uninvolved person might express surprise at receiving a payment exceeding $1 million, Gonzalez promptly took steps to withdraw or disburse the funds, depleting the JP Morgan account's balance within ten (10) days of the transfer.

that account. Accordingly, they availed themselves of the privilege of doing business in New York and the claims in this lawsuit stem from that availment.

Because Defendants have waived or forfeited their personal jurisdiction argument and because the exercise of personal jurisdiction complies with New York's long-arm statute and Due Process, Defendants' motion for summary judgment is DENIED.

## III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS GRANTED

Plaintiff asks the Court to pierce JDGU's corporate veil as to Gonzalez and seeks partial summary judgment against JDGU and Gonzalez on Count II (Unjust Enrichment), Count III (Conversion), Count V, VI, VII, VII (Fraudulent Conveyance), and Count IX (Money Had and Received). Defendants' sole argument in opposition is the Court lacks personal jurisdiction. *See* Dkt. No. 130. As a result, Defendants waived any argument opposing the merits of Plaintiff's motion, and the motion for partial summary judgment is GRANTED. *See Jackson v. Federal Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.") Regardless of Defendants' waiver, however, the motion should be granted on the merits.

### A. Piercing the Corporate Veil is Appropriate

Plaintiff first asks the Court to pierce JDGU's corporate veil and hold Gonzalez personally liable for any claims against JDGU. Under New York law, a court may pierce the corporate veil when "(1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff." *In re Vebeliunas*, 332 F.3d 85, 91–92 (2d Cir. 2003). The court may pierce the corporate veil "whenever necessary to prevent fraud or to achieve equity." *Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 439 (S.D.N.Y. 2018).

**1. Gonzalez Exercised Complete Control Over JDGU**

In determining whether a person has complete control over a corporate entity, courts consider: "the presence of corporate formalities; inadequate capitalization; commingling of personal and corporate funds; the payment or guarantee of debts; overlap of ownership, officers, directors, and personnel; and the amount of business discretion displayed" by the corporation. *Id*. at 440. These factors overwhelmingly show Gonzalez exercised complete control over JDGU. JDGU is a one-person company. Gonzalez is the sole member of JDGU, its sole manager, and its registered agent. Dkt. No. 115 ¶ 6. Its corporate address is Gonzalez's home address. *Id.* Mr. Gonzalez is the only signatory on the JDGU account associated with the fraud on Plaintiff. *Id.* ¶ 7..[5] And Defendants refused to provide any information or records regarding JDGU's legitimate business activity that could show that JDGU should be treated as an independent profit center or a truly separate corporate person. *Id.* ¶ 12; *see also Shantou Real Lingerie Mfg. Co.*, 401 F. Supp. 3d 433 at 440 (holding that the absence of records "that would evidence the workings of an actual corporation" weighs in favor of "a finding that a corporation failed to maintain corporate formalities"). These facts, amongst others, show that Gonzalez exercised complete control over JDGU.

**2. Gonzalez Used His Control to Commit Fraud**

Plaintiff sent money to a bank account JDGU controlled. JDGU then disbursed those monies. These facts are central to Plaintiff's claims in this lawsuit. As the only signatory on the JDGU account, it is evident Gonzalez authorized the transfers and withdrew the remaining funds from JDGU. Dkt. No. 115 ¶ 7. Resisting this conclusion, Defendants have suggested that

[5] Indeed, Defendants' reply in support of their motion highlights that JDGU was "owned and operated by" and "name[d] after . . . a single person": Gonzalez. Dkt. No. 135 at 4.

Gonzalez was no more than a mule or intermediary in the scheme. Dkt. No. 135 at 4. The Court cannot credit this argument given that no evidence has been offered to support it, and the available undisputed evidence shows that Gonzalez is the only individual with control over JDGU's bank account. At a minimum, even if Gonzalez was only some sort of intermediary, the scheme would not have been possible without his aid or participation.

**3. The Fraud Harmed Plaintiff**

Last, the fraud has unquestionably harmed Plaintiff, causing it to unwittingly send a nearly $2 million payment as a result of deception.

Accordingly, the Court will pierce JDGU's corporate veil and hold that Gonzalez is equally liable for any money judgment against JDGU.

**B. Summary Judgment is Granted on Count Three (Conversion)**

Count Three alleges conversion. *See* Compl. ¶¶ 70–74. Under New York law, conversion is "any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53–54 (2d Cir. 1993). To state a claim for conversion, "a plaintiff must show: (1) legal ownership or an immediate superior right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 312 (S.D.N.Y. 2011). A plaintiff alleging conversion "need not show fault by the defendant." *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 174 (S.D.N.Y. 2012), *aff'd and remanded*, 742 F.3d 520 (2d Cir. 2013).

The undisputed evidence contains sufficient facts to meet the two elements of the New York law conversion claim. First, the evidence clearly establishes Plaintiff's legal ownership of

the transferred money. Dkt. No. 115 ¶¶ 3–4, 15; *see Eldesouky*, 2014 WL 7271219, at *38–39 (noting that identifying a wire transfer to specified account is sufficient when stating a conversion claim under New York law). Second, JDGU had control and dominion over its own bank account. *See Gasson v. Premier Cap., LLC*, 43 F.4th 37, 42 n.1 (2d Cir. 2022). In turn, Gonzalez had control over JDGU as its sole member and employee, and sole signatory to the JDGU bank account. Gonzalez and JDGU also promptly disbursed funds from that account and have not returned them to the account or to Plaintiff. Accordingly, summary judgment is GRANTED as to Count Three.

### C. Summary Judgment is Granted on Counts II (Unjust Enrichment) and IX (Money Had and Received)

Counts Two and Nine allege unjust enrichment and money had and received, respectively. Compl. ¶¶ 64–69; *id.* ¶¶ 111–18. Under New York law, "an action for money had and received lies when (1) defendant received money belonging to plaintiff; and (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Amable v. New Sch.*, 551 F. Supp. 3d 299, 319 (S.D.N.Y. 2021). This action allows recovery of "money paid by mistake where it would be inequitable for the payee retain the money." *Amsave Credit Corp. v. Sec. Pac. Nat. Bank*, No. 89 CIV. 6502 (KMW), 1991 WL 95390, at *3 (S.D.N.Y. May 28, 1991). The Second Circuit has explained that "New York has long recognized" a rule of restitution that "an action may be maintained for . . . recovery" when a party pays money to another party based upon "the erroneous assumption" of indebtedness. *Citibank, N.A. v. Brigade Cap. Mgmt., LP*, 49 F.4th 42, 58 (2d Cir. 2022) (quoting *Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 366 (N.Y. 1991)). This rule "generally calls for restitution of the mistaken payment unless the recipient so significantly changed its position in reliance on the mistake that it would be unjust to require

repayment." *Id.* To determine whether a defendant should be permitted to keep the money under principles of equity and good conscience, "courts will look to see if a benefit has been conferred on the defendant under mistake of fact ... if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Onanuga v. Pfizer*, Inc., 369 F. Supp. 2d 491, 501 (S.D.N.Y. 2005) (quoting *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (N.Y. 1972)).

Under the facts of this case, the unjust enrichment claim is analyzed using a similar framework as the money had and received claim. The "essence" of an unjust enrichment claim is "that one party has received money or a benefit at the expense of another." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905 (4th Dep't 1999)). Under New York law, the elements of a money had and received claim are "essentially identical to a claim of unjust enrichment." *Johnson v. JP Morgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 160 (S.D.N.Y. 2020); *see also J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 129 (N.D.N.Y. 2008) (noting "claims for unjust enrichment and money had and received are identical" under New York law).

As discussed above, the parties do not dispute that Plaintiff wired money from its own bank account to JDGU's bank account. Dkt. No. 115 ¶¶ 3, 4. Defendant also did not dispute that Plaintiff was the rightful owner of the transferred amount and that JDGU was not a legitimate creditor of Plaintiff. *Id.* ¶ 15. And there can be little dispute that JDGU and Gonzalez benefitted from receiving the payment.

Both claims thus turn on this question: under principles of "equity and good conscience," should Defendants be required to return the transferred amount to Plaintiff? The answer is

clearly yes. Defendants received a payment exceeding $1 million, induced by intentional false statements and fraudulent misrepresentations. All available evidence indicates they committed the fraud or, at a minimum, knowingly participated in it at the behest of another. The initial fraudulent email asked Plaintiff to wire the funds to JDGU's bank account, controlled by Gonzalez. Defendants expressed no surprise at receiving the over-$1-million payment nor made any effort to return it to the bank or to Plaintiff. Instead, the JDGU account promptly disbursed a substantial portion to three other entities and Gonzalez withdrew the remainder, all within ten days of receipt. Gonzlez then proceeded to use the money for personal expenses.

Accordingly, summary judgment is GRANTED as to Counts Two and Nine.

**D. Summary Judgments is Granted on Counts V–VIII (Fraudulent Conveyance)**

Counts Five through Eight allege fraudulent conveyance under the New York Uniform Voidable Transactions Act based on actual and constructive fraud, because Defendants transferred Plaintiff's money to Gonzalez, GRF Consulting LLC, GI Constructors ZG LLC, and Supply A.K. LLC. Compl. ¶¶ 79–110. New York's Debtor and Creditor Law permits a creditor to void transfers by a debtor when the transfer is "actually fraudulent" or "constructively fraudulent.".[6] Plaintiff's fraudulent transfer claims succeed under either an "actually fraudulent" or a "constructively fraudulent" theory.

A transfer is actually fraudulent if it is made "with actual intent to hinder, delay, or defraud any creditor of the debtor." N.Y. Debt. & Cred. Law § 273(a)(1); *see also Res. Grp. Int'l Ltd. v. Chishti*, 814 F. Supp. 3d 467, 481 (S.D.N.Y. 2026). Rather than directly proving an actual intent, claimants may "rely on badges of fraud[,] *i.e.*, circumstances so commonly

[6] Plaintiff qualifies as a "creditor" and Defendants as "debtors" given Plaintiff is a "person that has a claim" and Defendants are "the person liable on a claim." N.Y. Debt. & Cred. Law § 270.

associated with fraudulent transfers that their presence gives rise to an inference of intent" in proving such wrongful intent exists. *Ray v. Ray*, 799 F. App'x 29, 32 (2d Cir. 2020). The "badges of fraud" include, *inter alia*, whether "the transfer was of substantially all of the debtor's assets," whether "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred," whether "the debtor was insolvent or became insolvent shortly after the transfer was made," and whether "the transfer occurred shortly before or shortly after a substantial debt was incurred." N.Y. Debt. & Cred. Law § 273(b); *see Campos v. V&B Inv. Guttenberg LLC*, No. 23-CV-01184 (DLC), 2024 WL 1178256, at *4 (S.D.N.Y. Mar. 19, 2024).

Ample "badges of fraud" exist to support an inference of wrongful intent. Defendants refused to produce any evidence to show that JDGU's transfers disbursing Plaintiff's funds had any valid purpose. Dkt. No. 115 ¶¶ 14, 20, 23. Defendants also conceded there are "no documents related to the purchase of goods or services between them" and the transferees, including any supporting invoice, *id.* ¶¶ 13–14, and that there were "no communications or documents exchanged" between these parties at all. *Id.* ¶ 22. If no communication occurred between the parties, it is unlikely that they were engaged in a transaction based on a fair exchange of value. As a result, the only logical inference is that JDGU obtained no value or consideration in exchange for the transfers. In addition, JDGU transferred or withdrew "the entire account balance" of the bank account (indeed, more than the total balance) within ten days of receiving the money from Plaintiff. *Id.* ¶ 16. The result of these transfers and the withdrawal left JDGU's account with a negative balance.

The transfers were also constructively fraudulent. A constructive fraudulent conveyance occurs when a conveyance is made "without a fair consideration" by a debtor "who is or will

thereby be rendered insolvent" or "who is left with unreasonably small capital." *John Deere Shared Servs. v. Success Apparel LLC*, No. 15-CV-01146 (JMF), 2015 WL 6656932, at *3 (S.D.N.Y. Oct. 30, 2015). As noted above, JDGU made the transfers without receiving value in return. The undisputed evidence also shows that JDGU was rendered insolvent by the transfers. Dkt. No. 115 ¶ 5.

Because Plaintiff has shown the transfers were both "actually fraudulent" and "constructively fraudulent," summary judgment is GRANTED on Counts Five through Eight as to JDGU and Gonzalez.

**E. Damages**

Last, Plaintiff moves for compensatory damages in the amount of $1,162,605.61 plus pre- and post-judgment interest. Plaintiff also moves for attorneys' fees and costs under New York's Debtor and Creditor Law § 273. The motion is GRANTED. Plaintiff shall make a supplemental filing including calculations of pre- and post-judgment interest along with an accounting of attorney's fees. Supporting materials, such as billing or time-keeping records, that support the application for attorney's fees may be submitted directly to the Court for *in camera* inspection if necessary to preserve attorney-client privilege or attorney work-product.

## CONCLUSION

For the foregoing reasons, Defendant JDGU and Gonzlez's motion for summary judgment (Dkt. No. 117) is DENIED, and Plaintiff's motion for partial summary judgment against JDGU and Gonzalez (Dkt. No. 114) is GRANTED. Plaintiff is hereby ORDERED to file a proposed judgment on or before **September 11, 2026**, for compensatory damages, appropriate interest, and attorney's fees. Accompanying the proposed judgment, Plaintiff must file calculations for interest and documents necessary for the Court to confirm attorney's fees. Last, Plaintiff is hereby ORDERED to file a letter on or before **September 11, 2026**, providing next

steps for this litigation and whether it intends to pursue default judgment against Defendants GI Constructors ZG LLC and Supply A.K. LLC..[7]

Dated: August 28, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

[7] Neither party has appeared in this action. The apparently incorrect GRF Consulting entity was dismissed by stipulation on August 26, 2025. Dkt. No. 151. On June 30, 2025, the Court denied without prejudice Plaintiff's motion for entry of a default judgment against GRF Consulting, LLC, GI Constructors ZG LLC, and Supply A.K. LLC given stipulation of dismissal regarding GRF Consulting, LLC. Dkt. No. 143. Plaintiff has not renewed its motion for default judgment since then.